UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

WILLIAM PRALLE,

    Plaintiff,

v.

COOLING & WINTER, LLC,
a Georgia limited liability
company; and MIDLAND
FUNDING LLC, a Delaware
limited liability company,

    Defendants.

_____/

CASE NO. 2:16-cv-00865-UA-CM

## <u>DEFENDANT, COOLING & WINTER, LLC'S, MOTION FOR SANCTIONS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 11</u>

COMES NOW Defendant, COOLING & WINTER, LLC ("C&W" or "Defendant"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 11(b) ("Rule 11"), hereby moves this Court for an entry of an Order of Sanctions, including an award of attorneys' fees and expenses, against Plaintiff, WILLIAM PRALLE ("Plaintiff") and Plaintiff's counsel, David W. Fineman, Esq., The Dellutri Law Group, P.A., for filing a frivolous Complaint which lacks Article III standing and fails to state a claim upon which relief may be granted.

The grounds for this Motion are set forth in the incorporated Memorandum of Law in Support.

1

<u>**MEMORANDUM OF LAW IN SUPPORT**</u>

**I.      PROCEDURAL POSTURE OF THE CASE AND INTRODUCTION**

Plaintiff obtained a credit card from World's Foremost Bank ("Original Creditor") and made purchases on the account resulting in an unpaid balance of $8,110.86.   When Plaintiff failed to pay his account, the Original Creditor charged-off the debt from its books and issued a final account statement indicating that the $8,110.86 balance had been charged-offed.  Midland Funding LLC ("Midland") subsequently purchased the unpaid account balance and received an assignment of same.

On April 14, 2014, Midland initiated a collection action against Plaintiff in Charlotte County, Florida, case number 14-000296-CC, seeking to collect the subject unpaid account balance (the "Collection Action").   On or about September 8, 2015, the parties reached a settlement in the Collection Action and on September 24, 2015, the parties executed a Settlement Agreement (the "Settlement Agreement").  *A true and correct copy of the Settlement Agreement dated September 24, 2015 is attached hereto and incorporated herein as **"Exhibit A."***  The terms of the Settlement Agreement provided that the Plaintiff would pay Midland a total of $2,400.00 over a period of twelve (12) months in the amount of $200.00 per month beginning on October 2, 2015 and continuing on the second of each month thereafter until complete. Specifically, the Settlement Agreement stated that "Defendant, WILLIAM PRALLE agrees to pay, and Plaintiff, MIDLAND FUNDING LLC ASSIGNEE OF WORLD'S FOREMOST BANK agrees to accept, the sum of $2,400.00, provided each payment is received by this office

2

on or before the due date listed on the attached Payment Schedule." *Please see **Exhibit A** at*

*paragraph 2.* The Settlement Agreement also contained the following term:

> In the event, Defendant, WILLIAM PRALLE, defaults in the making of any payment required by this agreement, then written notice of said default shall be given by, Frederick J. Hanna and Associates, P.C. or its attorneys, by regular mail to Defendant, WILLIAM PRALLE at his/her last known address.  If such default is not cured within ten (10) days of the date of said notice, then without further notice Plaintiff MIDLAND FUNDING LLC ASSIGNEE OF WORLD'S FOREMOST BANK shall be and is authorized to obtain a judgment for the amount demanded in the Complaint, plus all court costs minus any payments made, after written application to the Court and the filing of a copy of this agreement and an affidavit regarding the default and balance due.

*Please see **Exhibit A** at paragraph 5.*

On September 25, 2015, Midland's counsel at the time, Frederick J. Hanna & Associates, P.C. ("FJH"), filed the Settlement Agreement with the court and submitted a proposed Final Order Dismissing Case and Approving Settlement for the court's execution.  On September 30, 2015, the court executed the proposed Order which expressly reserved jurisdiction to "reopen the case for the purpose of enforcing the terms of the Settlement Agreement upon the filing by the Plaintiff of an affidavit of non-compliance with the settlement terms and provisions." *A true and correct copy of the Final Order Dismissing Case and Approving Settlement dated September 30, 2015 is attached hereto and incorporated herein as **"Exhibit B."***

From September 2015 until February 2016, Plaintiff made six (6) payments to Midland's counsel, FJH.   Specifically, Plaintiff's $200.00 monthly payments were processed on the following dates: September 29, 2015; October 27, 2015; November 27, 2015, January 5, 2016;

January 27, 2016; and February 29, 2016[1].  On April 8, 2016, Midland's new counsel for the

Collection Action, C&W[2], sent correspondence to Plaintiff's counsel, David W. Fineman, Esq.,

advising him that "your client's account is being serviced by Cooling & Winter, LLC.

MIDLAND FUNDING, LLC is the current owner of this account.  We are required to provide

some additional information pertaining to this account.  The current balance below may include

interest, fees, costs, and payments or credits that apply to this account.  Please keep this

information for your records" (the "CFPB Letter").  *A true and correct copy of C&W's letter*

*dated April 8, 2016 to Plaintiff's counsel is attached hereto and incorporated herein as* **"Exhibit**

**C."**  The CFPB Letter was sent by C&W in order to comply with the Consumer Financial

Protection Bureau's (the "CFPB") Consent Order with Midland (and other related entities) dated

September 9, 2015[3] (the "Consent Order").  Specifically, as part of the "Conduct Provisions" of

the Consent Order, Midland and "all other persons in active concert or participation with any of

them…are permanently restrained and prohibited from:

> b. Engaging in any Legal Collection without providing the
> Consumer with certain information about the Debt, unless
> previously provided, including but not limited to, the following
> information:
>> i. the name of the Creditor at the time of Charge-off,
>> including the name under which the Creditor did business
>> with the Consumer;
>> ii. the last four digits of the account number associated with
>> the Debt at the time of the Consumer's last monthly

---

[1]      Plaintiff failed to make a settlement payment in March 2016.  Plaintiff's remaining $200.00/month payments were processed on the following dates: April 19, 2016; April 29, 2016; May 27, 2016; June 27, 2016; July 26, 2016; and August 30, 2016.  Once Plaintiff's final payment on August 30, 2016 was processed, C&W prepared and filed a Notice of Voluntary Dismissal with Prejudice on September 20, 2016.

[2]      Indeed, although C&W is a new law firm separate and distinct from FJH, C&W was opened by two of FJH's partners and the majority of staff from FJH accepted new positions with C&W beginning on March 1, 2016.  The majority of the accounts being serviced by FJH, including the subject account at issue in this matter, were also acquired by C&W.

[3]      The full text of the CFPB Consent Order can be found at: http://files.consumerfinance.gov/f/201509_cfpb_consent-order-encore-capital-group.pdf.

account statement, or, if not available, at the time of
Charge-off;
iii. the Charge-off Balance;
iv. Encore's method of calculating any amount claimed in
excess of the Charge-off Balance; and
v. a statement that Encore, or Encore's agent, will, within
30 days of a written request, provide the consumer with
copies of the documentation referenced in Subsection (a) of
this Paragraph, at no cost…

(Consent Order, pp. 34-36)  As such, C&W as the new servicer/collector on the account, sent the

CFPB Letter to Plaintiff's counsel simply to ensure compliance with the Consent Order.

The CFPB Letter was addressed to Plaintiff's counsel, **not the Plaintiff**, and listed other

important account information such as the current creditor, Midland, the original creditor,

World's Foremost Bank, the account number (last four digits displayed), the account holder,

William Pralle, the internal file number, and the balance on the account.  The CFPB Letter also

listed "Additional Account Information" including the Charge-Off Balance in the amount of

$8,110.86 and the Current Balance in the amount of $7,263.86.   Although the Charge-Off

Balance was correctly listed, it did not reflect the court costs applied to the total balance in the

amount of $353.00 ($313.00 for cost of filing the lawsuit and $40.00 for service of process).  As

such, the actual total balance on the account, before any payments made by the Plaintiff were

applied, was $8,463.86.  Once the Plaintiff's settlement payments totaling $1,200.00 (as of April

8, 2016) were applied to the balance, the Current Balance resulted in the amount of $7,263.86.

Indeed, only until Plaintiff made all of his settlement payments in the amount of $2,400.00

would C&W adjust the balance to $0.00 and flag the account as paid in full pursuant to the

Settlement Agreement; this is evident from the plain and clear language in the Settlement

Agreement itself which permits FJH (or C&W afterwards) to obtain a "judgment for the amount demanded in the Complaint, plus all court costs minus any payments made…"

Plaintiff continued to make settlement payments as agreed and on August 30, 2016, made his last payment in the amount of $200.00.  Thus, C&W marked the account as paid in full based upon the terms of the Settlement Agreement.  Also pursuant to the terms of the Settlement Agreement, on September 20, 2016, Midland filed its Voluntary Dismissal with Prejudice of the Collection Action.

Plaintiff initiated the instant lawsuit against the Defendants[4] on December 7, 2016 (the "Complaint").  The Plaintiff's Complaint alleges violations of both the Fair Debt Collection Practices Act ("FDCPA") and the Florida Consumer Collection Practices Act ("FCCPA"). Plaintiff presumably claims that Defendants violated the 15 U.S.C. § 1692e[5] because the Defendants attempted to collect the debt from the Plaintiff by "falsely and misleadingly misrepresenting an amount that was not due and seeking to collect same." (Complaint ¶¶ 18 and 25, Dkt. Entry No. 1) Plaintiff also presumably claims that the Defendants violated Florida Statute § 559.72[6] because the Defendants attempted to collect a debt "while knowing the Debt was paid in full [which] constitutes a violation of the FCCPA by claiming, attempting, and enforcing a debt known no longer to be legitimate."  (Complaint ¶¶ 21 and 28, Dkt. Entry No. 1) In additional to seeking actual damages, statutory damages, and attorney's fees and costs under

---

[4]     Plaintiff and Midland have since entered into a Settlement Agreement.
[5]     Plaintiff fails to cite to the specific provision(s) of the FDCPA which he believes Defendants violated.
[6]     Plaintiff fails to cite to the specific provision(s) of the FCCPA which he believes Defendants violated.

both the FDCPA and FCCPA[7], Plaintiff will also seek punitive damages under the FCCPA "if discovery shows punitive damages [to] be proper."  (Complaint ¶¶ 23 and 30, Dkt. Entry No. 1).

The Complaint on its face is frivolous and the allegations made by the Plaintiff are wholly devoid of merit and as such, Plaintiff's Complaint should be dismissed.  First, pursuant to the United States Supreme Court case in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), it is clear that the Plaintiff does not have an injury in fact under Article III of the United States Constitution as the CFPB Letter was sent to Plaintiff's counsel, not Plaintiff, requiring dismissal of the Complaint for lack of jurisdiction.  Second, Plaintiff's allegations of FDCPA violations are wholly frivolous because the CFPB Letter on its face does not falsely or misleadingly misrepresent the amount owed as the balance of $7,263.86 was correctly stated.  Third, Plaintiff's claim under the FCCPA is also frivolous because the conduct alleged is not actionable as a matter of law and because the claim is barred by Florida's litigation privilege.  Accordingly, all counts alleged in the Complaint must be dismissed with prejudice as even if amendment were permitted, Plaintiff would still be unable to state a claim against Defendant and any allegations of FDCPA or FCCPA violations would remain frivolous.

## II.    LEGAL STANDARD FOR IMPOSITION OF RULE 11 SANCTIONS

Rule 11 provides, in pertinent part:

> **(b)   Representations to the Court.**  By presenting to the court a pleading, written motion or other paper-whether by signing, filing, submitting, or later advocating it-an attorney…certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

---

[7]     Plaintiff seeks actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692a(2)(A); attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3); actual damages, statutory damages in the amount of $1,000.00, and attorney's fees and costs pursuant to Florida Statute § 559.77(2); and punitive damages pursuant to Florida Statute § 559.77(2).

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on believe or a lack of information.

Fed. R. Civ. P. 11(b).  "The purpose of Rule 11 sanctions is to 'reduce frivolous claims, defenses, or motions and to deter costly meritless maneuvers." *Kaplan v. Daimler Chrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir. 2003).  Sanctions pursuant to Rule 11 are appropriate:

> (1)     When a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files the pleading in bad faith or for an improper purpose.

*Id.* (quoting *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir. 2001).  "Rule 11 'reinforces counsel's duty of candor to the Court by subjecting litigants to potential sanctions for making [] representations to the court for an improper purpose."  *F & G Research, Inc. v. Google*, 2007 U.S. Dist. LEXIS 70072, *34 (S.D. Fla. Sept. 21, 2007) (quoting *Footman v. Cheung*, 341 F. Supp. 2d 1218, 1225 (M.D. Fla. 2004)).

In determining whether to impose Rule 11 sanctions, the Court should engage in a two-step analysis to determine "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous."

*Allapattah Services, Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1372 (S.D. Fla. 2005) (quoting *Baker v. Alderman*, 158 F.3d 516, 542 (11th Cir. 1998)).  Rule 11 sanctions may be imposed against a represented party when there is a misrepresentation of fact in a pleading and the party "knew or reasonably should have known" that the representation was baseless.  *Byrne v. Nezhat*, 261 F.3d 1075, 1117-18 (11th Cir. 2001).

## III.   LAW AND ANALYSIS

### A.   Plaintiff Lacks Article III Standing

On May 16, 2016, the United States Supreme Court issued its ruling in the matter of *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).  The Court held that where a plaintiff does not have an injury in fact under Article III of the U.S. Constitution, a federal court should dismiss a complaint for lack of jurisdiction.  *Id.*  In *Spokeo*, the plaintiff brought a class action alleging violations the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et  seq.*, when the defendant published consumer reports on the Internet that contained false information about the plaintiff and putative class members.  *Id.*  In support of his individual claim, the plaintiff alleged that the defendant published a consumer report concerning him that misstated his family background, age, income, and education.  *Id.*  The plaintiff alleged that the defendant violated, *inter alia*, 15 U.S.C. §1681e(b), which requires a consumer reporting agency to "follow reasonable procedures to assure maximum possible accuracy" of consumer reports, and 15 U.S.C. § 1681e(d), which requires a consumer reporting agency to notify users of consumer information of their responsibilities under the FCRA.  *Id.*

The district court dismissed the FCRA claims for lack of Article III standing because the plaintiff had not alleged a concrete and particularized injury.  *Id.*  On appeal, the Ninth Circuit

9

reversed, holding that the defendant allegedly "violated [plaintiff's] statutory rights, not just the statutory rights of other people," and his "personal interests in the handling of his credit information [were] individualized rather than collective." *Robins v. Spokeo*, 742 F.3d 409, 413-14 (9th Cir. 2014).

The Supreme Court reversed and remanded the case because the circuit court had not adequately analyzed whether the plaintiff presented the concrete harm required for standing. *Supra.* The Court began its analysis with an overview of the requirements for federal jurisdiction under Article III of the Constitution. *Id.* That constitutional provision limits the jurisdiction of the federal courts to "Cases" and "Controversies." *Id.*; Art. III, §2. A plaintiff's standing to sue is a prerequisite to the existence of a case or controversy. *Id.* The doctrine of standing "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* at 1547. Standing requires that the plaintiff have: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). The plaintiff has the burden of establishing these elements and the plaintiff must "clearly...allege facts demonstrating" each element of standing. *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)). Even "named plaintiffs who [seek to] represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id.*, fn. 6 (quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 40 (1976)). With regard to claims for statutory damages under federal law, the Court stated that "Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have

standing," because injury in fact is a constitutional requirement. *Id.* at 1548. To establish injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Id.*

The Ninth Circuit erred by looking only to whether the plaintiff's injury was particularized - meaning it affected the plaintiff in a "personal and individual way" - without also addressing whether the plaintiff's injury was concrete. *Id.* Concreteness requires a *de facto* injury, meaning one that is "real" and not "abstract." *Id.* While an intangible injury can satisfy the concreteness requirement in some cases, *Spokeo* holds that a court should look to two factors in determining whether an intangible injury is sufficient: first, because the case-or-controversy requirement is grounded in historical practice, a court should look to whether an "alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts" and second, Congress's judgment about what "intangible harms…meet minimum Article III requirements" is also instructive and important. *Id.* at 1549. The Court recognized that "Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.*

Congress's power to create claims for statutory damages does not mean that a plaintiff automatically satisfies "the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* A concrete injury is required "even in the context of a statutory violation" and a plaintiff cannot, for example, "allege a bare procedural violation, divorced from any concrete harm, and satisfy

11

the injury-in-fact requirement of Article III." *Id.* Rather, a violation of a procedural right granted by a statute must create "a real risk of harm." *Id.* The Court analogized allowing claims for statutory damages where there is a real risk of harm to the common-law rule that victims of libel and slander *per se* may sue for damages even "if their harms may be difficult to prove or measure." *Id.* It is only when the purported procedural violation carries a real risk of harm that a plaintiff is not required to allege "any additional harm beyond the one Congress has identified" in granting a right to sue to vindicate a procedural right. *Id.*

Applying these principles to the plaintiff's FCRA claims in *Spokeo*, the Supreme Court offered two conclusions: (1) in enacting the FCRA, Congress sought to "curb the dissemination of false information"; and (2) but nevertheless, the plaintiff could not satisfy Article III by alleging a bare procedural violation of the FCRA without real harm. *Id.* at 1550. The Court doubted that a consumer reporting agency's failure to provide the required notice to a user of the agency's consumer information could result in harm when that information was entirely accurate. *Id.* The Court also stated that not all inaccuracies "cause harm or present any material risk of harm." *Id.* As an example, the Court stated that it was unlikely that the publication of an incorrect zip code could work a concrete harm. *Id.* Since the Ninth Circuit had not appreciated the distinction between concreteness and particularization of injury and it had not analyzed whether the "procedural violations alleged in this case entail a degree of risk sufficient to meet the concreteness requirement," the Court remanded the case for further proceedings, without deciding whether the plaintiff had alleged injury in fact. *Id.*

### 1.    Application of *Spokeo* to Plaintiff's Claim Requires Dismissal

In the case at hand, Plaintiff's Complaint fails to satisfy the first two prongs of the Article III standing requirements set forth in *Spokeo*: (1) that he has suffered an injury in fact; (2) that is fairly traceable to the challenged conduct of the Defendant.

First, Plaintiff has not alleged a concrete injury that gives rise to a case or controversy under Article III.  Plaintiff merely alleges he "has been damaged as a result of C&W's and Midland's conduct as it cause him to incur additional attorney's fees for the time to review the Letter and prior Settlement Agreement" and that as a result of C&W's violations of the FDCPA and FCCPA, he is entitled to actual damages, statutory damages, reasonable attorney's fees and costs and possibly punitive damages under the FCCPA.  (Complaint ¶¶16, 19, 22-23[8], Dkt. Entry No. 1)  As stated in *Spokeo*, a concrete injury is required as a plaintiff may not "allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III."  *Id.* at 1549.  To establish an injury-in-fact, the Plaintiff must show that he suffered "an invasion of a legally protected interest" that is "concrete and particularized" and actual or imminent, not conjectural or hypothetical."  *Id.* at 1548.   While Defendant acknowledges, as discussed in *Spokeo*, that the right to truthful information may be a legally protected interest and Plaintiff has alleged an invasion of this interest by virtue of the claim being couched as a misrepresentation under § 1692e of the FDCPA, Plaintiff has not met the concreteness threshold necessary to satisfy the injury-in-fact component of the Article III standing test.  To be concrete, the injury must be real and it must actually exist.  *Id.*

Plaintiff seemingly claims a "concrete" injury in Paragraph 16 of the Complaint wherein he claims he has incurred additional attorney's fees for the time to review the CFPB Letter and

Settlement Agreement when the CFPB letter "falsely and misleadingly mispresent[ed] an amount that was not due and seeking to collect same" and "attempt[ed] to collect an alleged Debt from Pralle while knowing the Debt was paid in full..." (Complaint ¶¶ 18 and 21, Dkt. Entry No. 1) In essence, Plaintiff alleges that the CFPB Letter was an attempt to collect a debt which he no longer owed due to the parties having entered into a Settlement Agreement.  Any alleged injury as a result of this allegation, however, is not concrete because it does not exist as a matter of law. Plaintiff's repayment obligations under the Settlement Agreement remained ongoing and most importantly, the plain language of the Settlement Agreement provided that Midland agreed to accept the settlement sum of $2,400.00 on the condition that that each settlement payment was "received by this office on or before the due date listed on the attached Payment Schedule." *Please see **Exhibit A** at paragraph 2.*  Indeed, when the CFPB Letter was sent on April 8, 2016, in the middle of the settlement payment period (Plaintiff made his last settlement payment on August 30, 2016), the account balance remained as the Charged-Off Balance plus court costs minus any payments made - $7,263.86.  As further indicia of this fact, paragraph 5 of the Settlement Agreement provided for judgment in Midland's favor should the Plaintiff default at any time and the judgment amount would be the "amount demanded in the Complaint, plus all court costs minus any payments made..." *Please see **Exhibit A** at paragraph 5.*

Further, the Complaint contains no allegation that the Plaintiff even read the allegedly offending CFPB Letter.  Undeniably, Plaintiff would be unable to make such an allegation as the CFPB Letter was **sent to Plaintiff's counsel, not the Plaintiff himself.**  Along the same lines, Plaintiff has not alleged he was misled or deceived by any statement contained in the CFPB Letter or that any alleged misrepresentation contained in the CFPB Letter influenced him to

---

[8]    Plaintiff's allegations are identical with regards to Midland.

14

behave in a manner any different than he ordinarily would have behaved.  In fact, Plaintiff continued to make the settlement payments as agreed and not until Plaintiff filed the instant action on December 7, 2016 was any issue raised by Plaintiff about the alleged violations related to the CFPB Letter.  Clearly, Plaintiff has completely failed to allege a concrete injury that would give rise to a case or controversy under Article III.

Second, even if this Court should find that Plaintiff established an injury-in-fact, Plaintiff's Complaint nonetheless fails to meet the second prong of the standing requirements: that the alleged injury-in-fact is fairly traceable to the challenged conduct of the Defendant.  In other words, "there must be a causal relationship between the injury and the conduct complaint of."  *Coccaro v. GEICO Gen. Ins. Co.*, 2016 U.S. App. LEXIS 7171, *7 (11th Cir. April 20, 2016).  At the pleading stage, "general factual allegations of injury resulting from the defendant's conduct may suffice to show standing, 'for on a motion to dismiss [a court] presume[s] that general allegations embrace those specific facts that are necessary to support the claim.'"  *Lujan v. Defenders of Wildlife*, 504 U.S. at 561.  Here, however, there are no specific facts necessary to support any allegation of injury.

Assuming, *arguendo*, that Defendant somehow violated Plaintiff's protected right to truthful information by misleadingly demanding payment for an amount not allegedly due, the Complaint still does not allege any injury fairly traceable to that invasion.  The Complaint contains no allegation that Plaintiff behaved any differently because the CFPB Letter allegedly falsely stated that Plaintiff owed a balance of $7,263.86.  There are no allegations of any kind that *but for* Defendant's involvement, Plaintiff would have done anything different or that the "misrepresentation" influenced his behavior in any capacity.  As previously stated, Plaintiff

15

continued to make the settlement payments as agreed.   As such, even if the Complaint demonstrates an injury-in-fact, such injury is not fairly traceable to the alleged conduct of the Defendant and because Plaintiff has failed to establish each of the standing requirements (and will never be able to do), dismissal of the Complaint is required as a matter of law.

> **B.      The Conduct Alleged in the Complaint is Not False, Deceptive, or Misleading Under Section 1692e of the FDCPA as a Matter of Law**

Not only is Plaintiff's Complaint devoid of merit and should be dismissed due to lacking Article III standing, but the conduct alleged in the Complaint is on its face not false, deceptive, or misleading under section 1692e of the FDCPA as a matter of law.   Section 1692e provides that debt collectors "may not use false, deceptive, or misleading representation or means in connection with the collection of any debt."   15 U.S.C. § 1692e.   However, as here, a claim is subject to dismissal if the conduct is not deceptive or misleading within the meaning of section 1692e as a matter of law.   *See Miljkovic v. Shafritz & Dinkin, P.A.,* 791 F.3d 1291 (11th Cir. 2015); *Walsh v. Law Offices of Howard Lee Schiff, P.C.*, 2012 WL 4372251, at *5-6 (D.Conn. Sept. 24, 2012) (finding that representations made during course of litigation were not subject to section 1692e).

Plaintiff's claims under 1692e are premised upon the CFPB Letter "wrongfully and misleadingly demanding payment for an amount not due and failing to issue a satisfaction of judgment following payment of a settlement agreement."   However, Plaintiff has not alleged how he – or anyone else – was "misled, deceived, or otherwise duped" by the CFPB Letter. *Miljkovic*, 791 F.3d at 1307 (quoting *Hemmingsen v. Merreli & Kramer, P.A.*, 674 F.3d 814, 819 (8th Cir. 2015)).   As previously explained in the prior section of this memorandum, the CFPB Letter was not misleading or deceptive in any way and in fact, Plaintiff's allegation that the

balance which C&W claimed as due was not actually due is inherently and patently false. Plaintiff's repayment obligations under the Settlement Agreement remained ongoing and most importantly, the plain language of the Settlement Agreement provided that Midland agreed to accept the settlement sum of $2,400.00 on the condition that that each settlement payment was "received by this office on or before the due date listed on the attached Payment Schedule." *Please see **Exhibit A** at paragraph 2.* Indeed, when the CFPB Letter was sent on April 8, 2016, in the middle of the settlement payment period (Plaintiff made his last settlement payment on August 30, 2016), the account balance remained as the Charged-Off Balance plus court costs minus any payments made - $7,263.86. As further indicia of this fact, paragraph 5 of the Settlement Agreement provided for judgment in Midland's favor should the Plaintiff default at any time and the judgment amount would be the "amount demanded in the Complaint, plus all court costs minus any payments made…" *Please see **Exhibit A** at paragraph 5.* As such, the CFPB Letter in no way misrepresented the amount or character of the debt and Plaintiff's claim for a FDCPA violation should be dismissed as a matter of law.

**C.   The Conduct Alleged in the Complaint was Not an Attempt to Enforce a debt No Longer to be Legitimate Under 559.72 of the FCCPA as a Matter of Law and is Barred by Florida's Litigation Privilege**

In addition to asserting a frivolous FDCPA violation based on the alleged misrepresentation of the current balance on the account in the CFPB Letter, Plaintiff's claim under the FCCPA is also frivolous because the conduct alleged is not actionable as a matter of law and because the claim is barred by Florida's litigation privilege. Plaintiff's claim under 559.72 of the FCCPA of the Complaint is not actionable as a matter of law because he will never be able to prove that C&W knew of the alleged impropriety of the underlying claim. Meaning,

17

in order to succeed on the claim under the FCCPA, the Plaintiff will have to prove that Defendant asserted the existence of a legal right to enforce a debt that it knew did not exist when it sent the CFPB Letter (which was not sent to the Plaintiff).  In this regard, the FCCPA places a higher burden on a plaintiff than its federal counterpart to prove a defendant had *actual knowledge* of the impropriety or overreach of a claim.  *In re Cooper*, 253 B.R. 286, 290 (N.D. Fla. 2000).  Moreover, "a court will not enter judgment under the FCCPA without more than the conclusory allegations of a plaintiff."  *Id.* (citing *Gill v. Kostroff*, 82 F. Supp. 2d 1354, 1362 (M.D. Fla. 2000).

Plaintiff attempts to allege that C&W "attempt[ed] to collect an alleged Debt from Pralle while knowing the Debt was paid in full constitutes a violation of the FCCPA by claiming, attempting, and enforcing a debt known no longer to be legitimate." (Complaint pp. 21 and 28, Dkt. Entry No. 1)  Of course, as further explained above, C&W was not attempting to collect an illegitimate debt when it listed the correct current balance of $7,263.86.  More importantly and unquestionably, there is no cause of action for C&W's conduct under the FCCPA because Plaintiff will never be able to prove actual knowledge of impropriety of the claim simply because the claim can never exist.  Midland agreed to accept the settlement amount of $2,400.00 in lieu of the Current Balance on the condition that all settlement payments were timely made; meaning, the Current Balance would only be updated to reflect the settlement amount upon completion of the settlement payments.  Indeed, if Plaintiff had defaulted in making any of the settlement payments, Midland would have been entitled to request a judgment, plus court costs, minus any payments made.  At the time the CFPB Letter was sent, the judgment amount which Midland could have sought was $7,263.86.  Clearly, Plaintiff will never be able to prove actual

knowledge of C&W asserting a right which allegedly did not exist and as such, Plaintiff's FCCPA claim is meritless and should be dismissed.

Further, pursuant to Florida's litigation privilege, "absolute immunity attaches to any act that occurs during the course of a judicial proceeding so long as the act has some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. United States Fire Ins. Co.,* 639 So. 2d 606, 608 (Fla. 1994). The Florida Supreme Court has held that the litigation privilege broadly applies to any acts occurring during the course of a lawsuit, whether the lawsuit is founded on common law, statutory, or other causes of action. *Echevarria, McCalla, Raymer, Barrett & Frapper, etc., v. Bradly Cole, etc.,* 950 So. 2d 380 (Fla. 2007). The Florida Supreme Court explained that the privilege is born out of the need for "candid and unrestrained communications in those proceedings, free of the threat of legal actions predicated upon those communications. *Id.*

Indeed, it is well-settled that Florida's litigation privilege applies to claims arising under the FCCPA. *E.g., Kinsey,* 509 Fed.Appx. at 854 (finding that the litigation privilege "applies to statutory violations, including those of the FCCPA"); *Gaisser v. Portfolio Recovery Associates, LLC,* 571 F.Supp.2d 1273 (S.D. Fla. 2008); *Dyer v. Choice Legal Group, P.A.,* 2015 WL 3650925, at *2 (M.D. Fla. June 11, 2015); *Perez v. Bureaus Inv. Group No. II, LLC,* 2009 WL 1973476, at *3 (S.D. Fla. July 8, 2009); *Merrill v. Dyck-O'Neal, Inc.,* 2015 WL 4496101, at *1 (M.D. Fla. July 23, 2015); *Acosta v. Gustino,* 2013 WL 6069862, at *4 (M.D. Fla. Nov. 18, 2013). "The filing and maintenance of a legal action…is precisely the kind of activity protected by Florida's litigation privilege." *Dyer,* 2015 WL 3650925, at *2; *see also, e.g., Gaisser v. Portfolio Recovery Associates, LLC,* 571 F.Supp.2d 1273 (S.D. Fla. 2008) (FCCPA claim based

19

on the alleged improper filing of a state court debt collection action barred by the litigation privilege).

Here, even assuming all the well-pled allegations of the Complaint are true, Plaintiff's claim under section 559.72 of the FCCPA would still be barred by the litigation privilege because it was premised upon C&W's CFPB Letter which was sent during pending litigation and as required by the CFPB Consent Order[9].   Further, the fact that the litigation privilege is generally an affirmative defense does not preclude this Court from dismissing Plaintiff's claim because the "applicability of the privilege can be clearly discerned from the face of the complaint."  *LatAm Invest, LLC v. Holland & Knight, LLP,* 88 So. 3d 240, 245 (Fla. 3d DCA 2011) (rejecting plaintiff's argument that the litigation privilege cannot be considered on a motion to dismiss); *Acosta,* 2013 WL 6069862, at *4.   Accordingly, Plaintiff's claim under section 559.72 must be dismissed as it is barred by Florida's litigation privilege.

## IV.    CONCLUSION

For the foregoing reasons, all Counts in the Complaint must be dismissed.

WHEREFORE, Defendants respectfully request this Court to enter an order: (1) granting this motion; (ii) dismissing all Counts alleged in the Complaint; (iii) finding that any further attempts at amending the Complaint would be futile, and dismissing all Counts alleged in the Complaint with prejudice; (iv) finding that Plaintiff's FDCPA claims were brought in bad faith and for the purpose of harassment and awarding Defendants their reasonable attorneys' fees and costs pursuant to Rule 11 and 15 U.S.C. § 1692k(a)(3); (v) finding that Plaintiff's FCCPA claim failed to raise a justiciable issue of law or fact and awarding Defendants their reasonable

attorneys' fees and costs pursuant to Rule 11 and section 559.77(2), Florida Statutes, and (vi) granting Defendants any such other and further relief as the Court deems just and proper.

## **RULE 11(c)(2) Certification**

Accordingly, Defendant serves, but does not file, this Motion pursuant to Federal Rule of Civil Procedure 11, and demands that the Plaintiff dismiss its Complaint with prejudice within twenty-one (21) days of such service.   If Plaintiff fails to timely dismiss its Complaint, Defendant intends to file this Motion with the Court at the appropriate time and seek their attorneys' fees related to the time defending the Complaint.

Dated:  February 3, 2017                              Respectfully Submitted,

COOLING & WINTER, LLC
7901 SW 6th Court, Suite 310
Plantation, FL 33324
Telephone: (954) 903-2806
Fax: (954) 370-6991

By:    /s/ Karen E. Berger
        Karen E. Berger, Esq., FBN 72991
        kberger@coolingwinter.com
        florida@coolingwinter.com

---

[9]        Although the court's Order Approving Settlement and Dismissing Case dismissed the lawsuit, the Court reserved jurisdiction to enforce the Settlement Agreement up to the payment of the last settlement payment.  When the CFPB Letter was sent on April 8, 2016, the Plaintiff had only made 50% of his settlement payments.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that the foregoing motion was filed and served on March 7, 2017

through CM/ECF on Plaintiff's counsel, David W. Fineman, Esq., The Dellutri Law Group, P.A.,

at [DFineman@DellutriLawGroup.com](mailto:DFineman@DellutriLawGroup.com).


/s/ Karen E. Berger
Attorney for Defendant